137 Nev., Advance Opinion 10

# IN THE SUPREME COURT OF THE STATE OF NEVADA

NAUTILUS INSURANCE COMPANY,
Appellant,
vs.
ACCESS MEDICAL, LLC; ROBERT
CLARK WOOD, II; AND FLOURNOY
MANAGEMENT LLC,
Respondents.

No. 79130

**FILED**

MAR 11 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Certified question under NRAP 5 concerning an insurer's right to reimbursement. United States Court of Appeals for the Ninth Circuit; Ronald M. Gould, Sandra S. Ikuta, and Ryan D. Nelson, Circuit Judges.

*Question answered.*

Selman Breitman, LLP, and Gil Glancz, Las Vegas; Linda Wendell Hsu, San Francisco, California; Peter W. Bloom, Oakland, California, for Appellant.

Harper Selim and James E. Harper, Las Vegas, for Respondent Flournoy Management LLC.

The Schnitzer Law Firm and Jordan P. Schnitzer, Las Vegas, for Respondents Access Medical, LLC, and Robert Clark Wood, II.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg and Joel D. Henriod, Las Vegas; Crowell & Moring LLP and Laura Anne Foggan, Washington, D.C.,
for Amici Curiae Complex Insurance Claims Litigation Association and American Property Casualty Insurance Association.

_____

BEFORE THE COURT EN BANC.

## OPINION

By the Court, STIGLICH, J.:

Under most standard liability insurance policies, the insurer owes a duty to defend its policyholder against suits by third parties seeking

21-07057

damages covered by the policy. Insurers and policyholders sometimes disagree as to whether the insurer's duty to defend is triggered by a particular suit. As a practical matter, those coverage disputes can rarely be resolved before it becomes necessary to actively defend the third party's suit. Accordingly, an insurer often offers to pay for the defense, while reserving its right to seek relief from the duty to do so.

In this case, the Ninth Circuit Court of Appeals certified the following question to this court:

> Is an insurer entitled to reimbursement of costs already expended in defense of its insureds where a determination has been made that the insurer owed no duty to defend and the insurer expressly reserved its right to seek reimbursement in writing after defense has been tendered but where the insurance policy contains no reservation of rights?

We conclude that the answer is yes. When a party to a contract performs a disputed obligation under protest and a court later determines that the contract did not require performance, the party may ordinarily recover in restitution. This rule gives effect to the terms of the parties' bargain. It applies to an insurance policy as it would to any other contract.

## FACTS AND PROCEDURAL BACKGROUND

The following facts are drawn from the Ninth Circuit's order certifying this question. *See Nautilus Ins. Co. v. Access Med., LLC*, Docket No. 79130 (Order Certifying Question to the Nevada Supreme Court, July 10, 2019). "[T]his court's review is limited to the facts provided by the certifying court, and we must answer the questions of law posed to us based on those facts." *In re Fontainebleau Las Vegas Holdings, LLC*, 127 Nev. 941, 953, 267 P.3d 786, 793 (2011).

Ted Switzer and respondents were former business partners who worked together to sell medical devices. After the partnership soured, Switzer filed a cross-complaint against respondents in California state

court. Among Switzer's thirty-one claims was one for "interference with prospective economic advantage," based on respondents' alleged interference with Switzer's business relationships with hospitals. During discovery, respondents uncovered an email that was not mentioned in the complaint. In the email, Jacqueline Weide, respondents' representative, approached a hospital administrator to discuss the sale of certain spinal implants. Weide stated that the current California distributor had been "banned from selling [those] implants." Switzer was the referenced distributor, but he was not named in the email.

Respondents tendered defense of the suit to their insurer, Nautilus. Under the insurance policy, Nautilus is required to defend respondents against "any 'suit' seeking . . . damages" because of a "personal and advertising injury," "arising out of . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organization." Nautilus initially declined to defend, but eventually decided to defend the suit while expressly reserving its rights. In particular, in multiple letters, it reserved the right to disclaim coverage, withdraw from defense, and obtain a reimbursement of defense fees if a court determined that no potential for coverage existed for the claims. Respondents did not object, and Nautilus began to defend respondents against Switzer's suit. Simultaneously, Nautilus sought a declaratory judgment in a Nevada federal district court, stating that it had no duty to defend respondents.

Nautilus eventually obtained the declaratory judgment it sought. The federal court found that Nautilus's duty to defend under the insurance policy was never triggered because Switzer's cross-complaint did not allege—and the Weide email did not contain—a false statement that

SUPREME COURT
OF
NEVADA

(O) 1947A

would support a claim for defamation, libel, or slander under California law.[1]

Nautilus then moved for further relief under the Declaratory Judgment Act, 28 U.S.C. § 2202, seeking reimbursement of the expenses it had already incurred defending the original California suit. The district court concluded that Nautilus was not entitled to further relief because Nautilus did not (1) include a claim for reimbursement or damages in its complaint, (2) show it was entitled to relief under 28 U.S.C. § 2202, or (3) establish that it was entitled to reimbursement under Nevada law.[2]

On appeal, the Ninth Circuit Court of Appeals affirmed that Switzer's suit did not trigger a duty to defend. *Nautilus Ins. Co. v. Access Med., LLC*, 780 F. App'x 457, 459 (9th Cir. 2019). However, it reserved judgment on whether Nautilus could seek further relief. It explained that Nautilus's entitlement to further relief turned on an unresolved issue of Nevada state law, because this court has not spoken directly on the issue of an insurer's entitlement to reimbursement under these circumstances. *Id.* at 459-60. The Ninth Circuit noted a split of authority among other state courts. Order Certifying Question, at 6-8 (citing *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 468 (Cal. 2005) (providing that "the insurer, having reserved its right, may recover from its insured the costs it expended to

---

[1]The Ninth Circuit's certification order does not clearly indicate whether the statement that Switzer was banned from selling implants was not false, or whether it was false but nevertheless did not support a claim for defamation, libel, or slander.

[2]Although choice-of-law issues in multistate coverage cases can be complex, none are presented for our review. The federal district court determined that California law governs the underlying allegedly tortious conduct, while Nevada law governs Nautilus's alleged right to reimbursement.

Supreme Court
of
Nevada

(O) 1947A

4

provide a defense, which, under its contract of insurance, it was never obliged to furnish"); *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1103 (Ill. 2005) (concluding that an insurer cannot obtain reimbursement because, by paying defense costs, "the insurer is protecting itself at least as much as it is protecting its insured"); and *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 515-16 (Wyo. 2000) (holding that the "insurer is not permitted to unilaterally modify and change policy coverage" by seeking reimbursement)).

The Ninth Circuit therefore certified the question to this court. We accepted the certified question because we agree that it presents an issue of first impression in this state.

## DISCUSSION

### Standard of review

We only accept certification of "questions of law." NRAP 5. We decide those questions of law de novo, *see, e.g., Nev. Dep't of Corrs. v. York Claims Servs. Inc.*, 131 Nev. 199, 203, 348 P.3d 1010, 1013 (2015), in accordance with the purpose of a certified question, which is to clarify our state's law "when there is no controlling precedent," *see* NRAP 5(a). However, our "role is limited to answering the question[ ] of law posed" to us. *Fontainebleau*, 127 Nev. at 955, 267 P.3d at 794-95. Accordingly, we do not revisit the certifying court's factual determinations. *Id.* at 953, 267 P.3d at 793.

### No contract governs the right to reimbursement here

Nautilus contends that it is entitled to reimbursement under a theory of unjust enrichment or quasi-contract. However, respondents answer that "unjust enrichment is not available when there is an express, written contract" covering the same subject matter. *Leasepartners Corp. v. Robert L. Brooks Tr.*, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997).

SUPREME COURT
OF
NEVADA

(O) 1947A

5

Respondents contend that the insurance policy, and only the insurance policy, governs this dispute. We disagree.

Insurance policies are, of course, contracts, and they are treated like other contracts. *Century Sur. Co. v. Andrew*, 134 Nev. 819, 821, 432 P.3d 180, 183 (2018). "An insurance policy [typically] creates two contractual duties between the insurer and the insured: the duty to indemnify and the duty to defend."[3] *Id.* at 822, 432 P.3d at 183. These duties are distinct, but related. "[A]n insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 127 Nev. 407, 412, 254 P.3d 617, 621 (2011). There is a potential for indemnification when the allegations in the third party's complaint show that there is "arguable or possible coverage," *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 687, 99 P.3d 1153, 1158 (2004), or when the insurer "ascertains facts which give rise to the potential of liability under the policy," *Century Sur.*, 134 Nev. at 822, 432 P.3d at 183 (internal quotation marks omitted).

"However, 'the duty to defend is not absolute.'" *United Nat'l*, 120 Nev. at 687, 99 P.3d at 1158 (quoting *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988)). If neither the

---

[3]On one occasion, this court stated that the duty to defend is a "legal duty that arises under the law, as opposed to a contractual duty arising from the policy." *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 318, 212 P.3d 318, 330 (2009). In context, it appears the *Allstate* court meant to refer to the implied duty of good faith and fair dealing. *Cf. id.* at 309, 212 P.3d at 324 (framing issue as "the relationship between an insurer's duty to defend and the implied covenant of good faith and fair dealing"). When an insurer has a contractual duty to defend, the law implies a duty to do so in a reasonable manner. *Id.* at 311-12, 212 P.3d at 326. But the duty to defend arises, in the first place, from the contract.

allegations of the complaint nor the facts known to the insurer show any possibility of coverage, then there is no duty to defend. In such a case, the insurance policy simply does not apply.

In this case, the federal district court held, and the Ninth Circuit affirmed, that the duty to defend was "not triggered," as the Weide email did not contain a false statement that would support a claim for defamation, libel, or slander. Order Certifying Question, at 4; *see Nautilus*, 780 F. App'x at 459. Because this case is a certified question, not an appeal, we are not concerned with whether we would have reached the same conclusion. We accept the judgment of the federal courts that there was never even "arguable or possible coverage." *See United Nat'l*, 120 Nev. at 687, 99 P.3d at 1158. We are concerned here only with the consequences of that judgment.

Accordingly, we give no weight to respondents' arguments concerning the scope of the insurer's duty to defend in the first instance. To be sure, it is true that insurance policies are "broadly interpreted," *United Nat'l*, 120 Nev. at 684, 99 P.3d at 1156; that doubts regarding coverage should be resolved in favor of the policyholder, *id.* at 687, 99 P.3d at 1158; and that policies should be construed to achieve the policyholder's reasonable expectations, *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 162, 252 P.3d 668, 672 (2011). But this court is not tasked with construing the policy. The federal courts have already done that, and they have determined that under the policy, Nautilus never owed a duty to defend.[4]

---

[4]In some cases, the duty to defend is triggered when the complaint is filed, but that duty later ceases due to changed circumstances. *Great Am. Ins. Co. v. Superior Court*, 100 Cal. Rptr. 3d 258, 269 (Ct. App. 2009) (stating that the duty to defend may terminate due to "(1) the discovery of new or additional evidence, (2) a narrowing or partial resolution of claims in the

Nautilus would not have had any contractual duty to indemnify respondents even if Switzer had prevailed at trial. *See Century Sur.*, 134 Nev. at 822, 432 P.3d at 184. Therefore, the contract between the parties does not apply to the instant dispute, and the existence of that contract does not foreclose an unjust enrichment claim.

*A party that performs a disputed obligation under protest, and does not in fact have a duty to perform, is entitled to reimbursement*

Having concluded that the contract does not govern, we turn to the merits of Nautilus's unjust enrichment claim. Unjust enrichment has three elements: "the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Cert. Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012) (internal quotation marks omitted). When the insurer furnishes a defense, it is clear that the insurer has conferred a benefit on the policyholder, and that the policyholder appreciates it. The issue is whether equity requires the policyholder to pay.

This situation, although arising here in the context of an insurance policy, arises more generally in contract law. Even reasonable parties to a contract may disagree as to the application of their contract to an unforeseen situation. In particular, one party may believe in good faith that performance is due, while the other party—also in good faith—disagrees. A court will ultimately have to decide who is right and who is wrong. But in the meantime, it can be inefficient and inequitable to require

---

underlying action, or (3) the exhaustion of the policy"); *see Benchmark*, 127 Nev. at 412, 254 P.3d at 621 (noting that the duty to defend "continues until th[e] potential for indemnification ceases"). That is not what the district court determined happened here.

those parties to obtain a declaratory judgment before proceeding. *See generally* Mark P. Gergen, *Restitution as a Bridge Over Troubled Contractual Waters*, 71 Fordham L. Rev. 709 (2002); *see also id.* at 718-19 (noting that "[t]here are no preliminary declaratory judgments").

That is especially true in the insurance context. An insurer that refuses to defend a claim and then loses the coverage dispute may be subject to significant liability, which can vastly exceed the policy limits. *See Century Sur.*, 134 Nev. at 820, 432 P.3d at 182 (holding that "an insurer's liability where it breaches its contractual duty to defend is not capped at the policy limits plus the insured's defense costs, and instead, an insurer may be liable for any consequential damages caused by its breach"). This creates a significant disincentive for the insurer to deny a defense outright when there is *any* possibility—even a relatively remote one—that the claim may turn out to be covered.

These situations arise frequently enough that scholars have devised solutions. The Restatement (Third) of Restitution and Unjust Enrichment provides that:

> If one party to a contract demands from the other a performance that is not in fact due by the terms of their agreement, under circumstances making it reasonable to accede to the demand rather than to insist on an immediate test of the disputed obligation, the party on whom the demand is made may render such performance under protest or with reservation of rights, preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement.

Restatement (Third) of Restitution & Unjust Enrichment (hereinafter Restatement (Third)), § 35 (2011).[5] The Restatement provides illustrations applying this reasoning to insurance coverage disputes much like the present one.

We are persuaded by the Restatement's reasoning. When time is precious, it makes sense for the parties to decide quickly *what to do*, and to litigate later *who must pay*. Because an insurer risks unbounded liability if it loses the coverage dispute after refusing to defend a suit, it is generally "reasonable [for the insurer] to accede to the demand rather than to insist on an immediate test of the disputed obligation." *See id.* Under these circumstances, we conclude that when a court determines that the insurer never had a duty to defend, and the insurer clearly and expressly reserved its right to seek reimbursement, it is equitable to require the policyholder to pay.[6] Therefore, we hold that when a court finally determines that the insurer had no contractual duty to defend, the insurer may ordinarily recover in restitution if it has clearly reserved its right to do so in writing.

---

[5]The authors of the Restatement have likened this to the Uniform Commercial Code's "machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute." Restatement (Third) § 35 reporter's note cmt. a (quoting UCC § 1-308, cmt. 1). The UCC has been adopted in Nevada. NRS 104.1308 (adopting UCC § 1-308). However, the UCC does not apply to insurance contracts.

[6]Respondents argue that the insurer also benefits from exercising its right to defend a suit. *See Gen. Agents*, 828 N.E.2d at 1103. That may well be true, but in our view, that does not make it less equitable to require the policyholder to pay. The insurer benefits only by managing its risk and limiting its potential losses; it does not profit, but rather expends money. Any benefit is shared by the policyholder. Requiring the policyholder to pay for the defense would not provide a windfall or double benefit to the insurer.

Our decision today accords with the approach in California, which has historically been the majority approach. *See Scottsdale*, 115 P.3d at 471; Order Certifying Question, at 7; *see also* Angela R. Elbert & Stanley C. Nardoni, Buss *Stop: A Policy Language Based Analysis*, 13 Conn. Ins. L.J. 61, 90 (2006) (referring to California's approach as the majority rule); Restatement of Liability Insurance, § 21, cmt. a (2019) (adopting rule against reimbursement "while recognizing that a slightly greater number of state courts have espoused contrary views").[7] In California, the *Scottsdale* court noted the sound policies behind reimbursement:

> An insurer facing unsettled law concerning its policies' potential coverage of the third party's claims should not be forced either to deny a defense outright, and risk a bad faith suit by the insured, or to provide a defense where it owes none without any recourse against the insured for costs thus expended.

*Scottsdale*, 115 P.3d at 470 (discussing *Buss v. Superior Court*, 939 P.2d 766, 778 (Cal. 1997)). We agree. As our law has more forcefully encouraged insurers to offer to defend doubtful claims, *see Century Sur.*, 134 Nev. at 822 n.4, 432 P.3d at 184 n.4, it is only fair to permit those insurers to recover costs that they never agreed to bear.

*Restitution does not modify the contract*

We are unpersuaded by respondents' arguments against reimbursement. However, as the Ninth Circuit noted in its certification

---

[7]We note that the Restatement of Liability Insurance justifies its departure from the usual rule by reference to "special considerations of insurance law" that make insurance policies fundamentally different from other contracts. Restatement of Liability Insurance, § 21, cmt. b. That reasoning is inconsistent with our precedent that "legal principles applicable to contracts generally are applicable to insurance policies." *Century Sur.*, 134 Nev. at 821, 432 P.3d at 183.

order, several state courts have found those arguments persuasive, and our opinion today has also inspired a dissent. Accordingly, we take this opportunity to explain why we have rejected the contrary viewpoint.

Some courts have held that reimbursement is "tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract." *Gen. Agents*, 828 N.E.2d at 1102 (internal quotation marks omitted); *see Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.*, 2 A.3d 526, 544 (Pa. 2010) (holding that insurer cannot "reserve a right it does not have pursuant to the contract"). In those courts' view, an insurer can only seek reimbursement if the policy expressly permits it. Relatedly, respondents argue that the policy's express language requires Nautilus to bear "all expenses [it] incur[s]" for any claim it chooses to defend, whether or not the policy required it to defend that claim in the first place. *Cf.* Buss *Stop*, *supra*, 13 Conn. Ins. L.J. at 93-98 (arguing that "if the insurer defends (whether it acted because its duty was clear or it thought that the question of coverage was close enough so that it would be dangerous to refuse to defend), it must bear those costs").

We disagree. As explained above, when a court holds that there never was a duty to defend, it is holding that the claims were never even potentially covered by the policy. Therefore, when the insurer reserved its right to seek reimbursement, it was not extracting an amendment to a contract that would otherwise govern its defense. *No* contract governed its defense. In these circumstances, there is no reason it cannot reserve a right it has, not pursuant to the contract, but pursuant to the law of restitution. *See* Restatement § 35 cmt. a (recognizing that "the 'rights reserved' by a performing party—'where one party is claiming as of right something which the other believes to be unwarranted'—include a claim in restitution for the

SUPREME COURT
OF
NEVADA

(O) 1947A

12

value of any benefit conferred in excess of the recipient's contractual entitlement" (quoting UCC § 1-308 cmt. 2)).

Similarly, while we decline to consider specific insurance policy language that was not included in the certifying order, *see Fontainebleau*, 127 Nev. at 953, 267 P.3d at 793, any such policy language would not control. Nautilus did not have any contractual duty to defend respondents, so it could properly condition its provision of a defense on a reservation of its rights. In short, Nautilus agreed to defend against certain kinds of allegations, and not others. Allowing reimbursement does not modify the policy, but rather gives effect to the parties' agreement. *See Scottsdale*, 115 P.3d at 469 (concluding that because "the insurer does not bargain to assume the cost of defense of claims that are not even potentially covered[,] . . . shift[ing] these costs to the insured does not upset the contractual arrangement between the parties").

*Restitution does not erode the duty to defend*

We also strongly disagree with the view that permitting reimbursement "would amount to a retroactive erosion of the broad duty to defend" and would "narrow [the] long-standing view that the duty to defend is broader than the duty to indemnify." *See Am. & Foreign Ins. Co.*, 2 A.3d at 543-44. In Nevada, the duty to defend is indeed broadly construed, and doubts are resolved in favor of the policyholder. *United Nat'l*, 120 Nev. at 684, 687, 99 P.3d at 1156, 1158; *see Powell*, 127 Nev. at 162, 252 P.3d at 672. It is "broader than the duty to indemnify" because an insurer must defend even claims that the third party does not ultimately prove. *United Nat'l*, 120 Nev. at 686, 99 P.3d at 1158. But the duty to defend is "not absolute." *Id.* at 687, 99 P.3d at 1158 (internal quotation marks omitted). When a court concludes that a claim was never even potentially covered, then the court should hold that the duty to defend never arose. *Cf. Makarka*

*v. Great Am. Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000) (recognizing that "a duty to defend does not arise whenever an insurer and an insured have a dispute over coverage"). As we have explained above, a consequence of that holding is that the insurer may be entitled to reimbursement if it properly reserved its rights.

In contrast, the courts which deny reimbursement appear to reason that—at least in general—a court *cannot* hold that there never was a duty to defend. Rather, if the duty was disputed and the insurer defended under a reservation of rights, the court can only hold that there is *no longer* a duty to defend. *See Gen. Agents*, 828 N.E.2d at 1104 (concluding that an insurer is "obligated to defend [its policyholder] as long as any questions remain[ ] concerning whether the underlying claims were covered by the policies"); *Am. & Foreign Ins. Co.*, 2 A.3d at 542 (holding that when the "court resolves the question of coverage[,] . . . [that] does not, however, retroactively eliminate the insurer's duty to defend its insured during the period of uncertainty").[8] In those states' view, any time an insurer agrees to defend a claim—even under a reservation of rights—the claim is "potentially covered" and thus triggers the duty to defend. *See Am. & Foreign Ins. Co.*, 2 A.3d at 543 ("That [Insurer] was uncertain about coverage, or, more precisely, believed the claim against Insured in the

_____

[8]The *American & Foreign Insurance* court concluded its opinion by "hold[ing] that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend." 2 A.3d at 546. We think those final lines are not consistent with the reasoning of the case as a whole. As we read it, *American & Foreign Insurance* holds—along the same lines as *General Agents*—*not* that an insurer cannot obtain reimbursement when there was never a duty to defend, but instead that an insurer ordinarily *does* have a duty to defend claims pending a declaratory judgment action. *See Gen. Agents*, 828 N.E.2d at 1104; *Am. & Foreign Ins. Co.*, 2 A.3d at 542.

[third-party] action was potentially covered, *is apparent from its action in furnishing a defense* . . . ." (emphasis added)). In this construction, an insurer's reservation of the right to seek a declaration that the duty to defend never arose in the first place would be ineffective at best, and nonsense at worst.

Because an insurer in those states necessarily has a *duty* to defend any time it *does* defend, it may be true that permitting reimbursement would narrow that duty. But the duty to defend in Nevada has never been that expansive. An insurance policy is a contract, and we do not "force upon parties contractual obligations, terms or conditions which they have not voluntarily assumed." *See McCall v. Carlson*, 63 Nev. 390, 424, 172 P.2d 171, 187 (1946). "[W]here, as here, there was never a duty to defend, this limited remedy [i.e., extinguishing the insurer's obligation to pay only prospectively from the date of the judgment] provides the insured more, and the insurer less, than the parties' bargain contemplated." *Scottsdale*, 115 P.3d at 470-71. Here, the parties bargained for Nautilus to defend against certain kinds of allegations, and the federal courts have determined that Switzer's allegations were not of that kind. We do not erode the duty to defend by acknowledging its existing limits.

## CONCLUSION

When a court determines that an insurer never owed a duty to defend, the insurer expressly reserved its right to seek reimbursement in writing after defense was tendered, and the policyholder accepted the defense from the insurer, then the insurer is entitled to that reimbursement. Under generally applicable principles of unjust enrichment and restitution, the insurer has conferred a benefit on the policyholder; the policyholder appreciated the benefit; and, because it is

reasonable for the insurer to accede to the policyholder's demand, it is equitable to require the policyholder to pay. This result gives effect to the parties' agreement, as well as the court's judgment, by recognizing that the insurer was never contractually obligated to furnish a defense.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Pickering

_____, J.
Herndon

CADISH, J., with whom PARRAGUIRRE and SILVER, JJ., agree, dissenting:

Relying upon *Scottsdale Insurance Co. v. MV Transportation*, 115 P.3d 460, 468 (Cal. 2005), and the Restatement (Third) of Restitution and Unjust Enrichment section 35 (Am. Law Inst. 2011), the majority holds that Nautilus has the right to reimbursement for the costs it spent defending its insureds in litigation, even though the insurance policy does not contain a reimbursement provision, because Nautilus tendered defense under an express reservation of rights and because the insureds' claims were not potentially covered by the insurance policy. While this may be the majority approach among jurisdictions that have addressed this issue, this rule is contrary to Nevada precedent and long-standing legal principles. Therefore, I must dissent.

*Theories of unjust enrichment and quasi-contract are not available when there is an express, written contract*

The authority relied on by the majority is expressly predicated on a theory of unjust enrichment or quasi-contract. In *Scottsdale Insurance*, the Supreme Court of California held that an "insurer, having reserved its right, may recover from its insured the costs it expended to provide a defense which, under its contract of insurance, it was never obliged to furnish." 115 P.3d at 468. In so holding, the court relied upon its prior ruling in *Buss v. Superior Court*, 939 P.2d 766 (Cal. 1997). *Scottsdale Ins. Co.*, 115 P.3d at 468. In *Buss*, the court expressly stated that its holding was predicated upon a theory of unjust enrichment or quasi-contract. 939 P.2d at 776-77. Similarly, the Restatement (Third) of Restitution and Unjust Enrichment section 35 is also predicated on a theory of unjust

enrichment. *See* Restatement (Third) of Restitution and Unjust Enrichment § 35 cmt. a (Am. Law Inst. 2011) ("Where a valid contract defines the scope of the parties' respective performance obligations, a performance in excess of contractual requirements—neither gratuitous, nor pursuant to compromise—results in the unjustified enrichment of the recipient and a prima facie claim in restitution.").[1]

However, under Nevada law, "a theory of unjust enrichment *is not available* when there is an express, written contract." *LeasePartners Corp. v. Robert L. Brooks Tr.*, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997) (emphasis added). Similarly, recovery by quasi-contract is not available when there is an express, written contract. *Id.* at 756, 942 P.2d at 187. As we noted, "permit[ting] recovery by quasi-contract where a written agreement exists would constitute a *subversion of contractual principles*."

---

[1]Even if it were to be adopted in Nevada, the record demonstrates that application of the Restatement (Third) of Restitution and Unjust Enrichment section 35 to the underlying dispute here is inappropriate. Comment a to section 35 states that restitution is only appropriate where it is impossible to obtain a legal determination "before the claimed performance is due," thereby compelling a party to overperform. Restatement (Third) of Restitution and Unjust Enrichment § 35 cmt. a (Am. Law Inst. 2011). Here, Access Medical sent numerous letters to Nautilus requesting that Nautilus tender defense. Nautilus accepted the request under a reservation of rights in May 2014. However, Nautilus did not undertake the defense until October 2014 and did not seek a declaratory judgment from the federal district court until February 2015. In sum, Nautilus *waited at least nine months* even after accepting the tender under a reservation of rights before it sought a legal determination of its duty to defend. I am not convinced that it would have been impossible for Nautilus to obtain a legal determination of its obligation to defend its insureds in that period. Therefore, application of the Restatement (Third) of Restitution and Unjust Enrichment section 35 is inappropriate for this independent reason.

*Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824 (1977) (emphasis added). Indeed, this is a generally accepted fundamental legal principle across the country. *See Cty. Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607-08, 608 n.8 (Md. 2000) (collecting cases). Therefore, this court should reject Nautilus's reliance on *Scottsdale Insurance* and the Restatement (Third) of Restitution and Unjust Enrichment section 35, which are contrary to established Nevada law.

*An express, written contract exists between Nautilus and its insureds*

To avoid this binding authority that precludes restitution under a theory of unjust enrichment or quasi-contract when an express contract exists between parties, *LeasePartners Corp.*, 113 Nev. at 755, 942 P.2d at 187, the majority holds that no contract between Nautilus and Access Medical governed the dispute prompting the instant certified question. But Nautilus and Access Medical had a lengthy, detailed contract drafted by Nautilus that covered the entire insurer-insured relationship and set out the parties' rights and obligations. The contract did not contain *any* provision allowing for the recoupment of costs expended if a court later determined that Nautilus never had a duty to defend Access Medical. Furthermore, the contract contained an integration clause, making it clear that the contract constituted the parties' entire agreement governing their insurer-insured relationship.[2] The record demonstrates that Access

---

[2]The majority relies upon *In re Fontainebleau Las Vegas Holdings, LLC*, 127 Nev. 941, 267 P.3d 786 (2011), to disregard the contract's integration clause. In *Fontainebleau*, we held that, when answering a certified question pursuant to NRAP 5, we "may not use information in the appendix to contradict the certification order." 127 Nev. at 956, 267 P.3d at

Medical believed there was a potential for coverage triggering Nautilus's duty to defend under the terms of the insurance contract when it asked Nautilus to defend the underlying suit. Furthermore, the record demonstrates that Nautilus believed a court might determine there was a duty to defend under the terms of the insurance contract because it chose to tender a defense—albeit under a reservation of rights—rather than refuse. Accordingly, the majority's holding that there was no contract governing the subject matter of the underlying dispute between Nautilus and Access Medical is belied by the record. Plainly, this was not an extra-contractual undertaking by Nautilus, but rather a defense undertaken based on the very existence of the parties' contract.

The fact that a contract does not provide for a particular remedy—here, reimbursement of defense costs—does not mean that the contract is inapplicable and thus extra-contractual remedies are available; to the contrary, it represents a considered choice, presumably by Nautilus as the contract's drafter, not to provide for this remedy.[3] Allowing extra-contractual remedies in this circumstance would upend the fundamental

---

795. Here, the order certifying question makes no mention of the contract's integration clause or whether one exists. Therefore, relying on this express contract language does not contradict anything in the certifying court's order.

[3]The heading in the majority opinion, "No contract governs the right to reimbursement here," is simply incorrect. The insurance contract governs the parties' entire relationship, including the duty to defend, and the fact that this recoupment remedy is not provided means it is not available, not that there is no applicable contract. The conclusion by the federal court that there is no duty to defend, which we must accept, does not lead to the conclusion that there is no contract.

principles established by these cases. *See Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982) ("If a quasi-contract action could be brought every time a party under contract performs a service not precisely covered by the contract, then the rule preventing quasi-contract actions when a contract exists would have little meaning."). The fact that the duty to defend was found not to exist in this circumstance does not equate to dissolution of the entire contractual relationship or allow us to disregard it.

*There is a special relationship of trust and reliance between an insurer and its insured*

Rather than relying on these extra-contractual remedies, this court should look to Nevada insurance law precedent and the plain language of the insurance policy to determine whether Nautilus is entitled to reimbursement. "An insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. v. Neal*, 119 Nev. 62, 64, 64 P.3d 472, 473 (2003). We construe the language in a contract "from the perspective of one not trained in law and give plain and ordinary meaning to the terms." *Id.* (internal quotations and citation omitted). Additionally, we will not rewrite unambiguous provisions of a contract. *Id.* at 65, 64 P.3d at 473. Furthermore, because insurance contracts are contracts of adhesion, we construe ambiguity in an insurance contract "against the drafting party and in favor of the insured." *Farmers Ins. Grp. v. Stonik*, 110 Nev. 64, 67, 867 P.2d 389, 391 (1994).

Importantly, we have long recognized that "[t]he relationship of an insured to an insurer is one of special confidence."[4] *Ainsworth v. Combined Ins. Co. of Am.*, 104 Nev. 587, 592, 763 P.2d 673, 676 (1988). Consumers purchase insurance to protect against risk and obtain "security, protection, and peace of mind." *Id.* The duty to defend is part of this protection, relieving the insured from the financial burden of litigation. *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 309, 212 P.3d 318, 324 (2009). Accordingly, the duty to defend is broad, arising whenever an insurer "ascertains facts which give rise to the *potential* of liability under the policy." *Century Sur. Co. v. Andrew*, 134 Nev. 819, 822, 432 P.3d 180, 183 (2018) (emphasis added) (internal quotations omitted). Once triggered, the duty to defend continues throughout the litigation, *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 687, 99 P.3d 1153, 1158 (2004), or until the "potential for indemnification ceases," *Benchmark Ins. Co. v. Sparks*, 127 Nev. 407, 412, 254 P.3d 617, 621 (2011).

---

[4]The majority flatly states that insurance policies are treated like other contracts. However, we have long recognized that the relationship between an insurer and insured is akin to a fiduciary relationship. *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 700, 962 P.2d 596, 602 (1998). Therefore, the majority's reliance on generally applicable basic contract principles without addressing the special relationship between an insurer and its insureds is contrary to Nevada precedent. *See Ins. Co. of the W. v. Gibson Tile Co.*, 122 Nev. 455, 462, 134 P.3d 698, 702 (2006) (recognizing that an insurer has "vastly superior bargaining power" than its insureds, that its relationship with its insureds involves "a special element of reliance," and that in such situations, we will "protect the weak from the insults of the stronger" (internal quotations omitted)).

*Nautilus is not entitled to reimbursement*

The at-issue insurance contract does not contain *any* provision that entitles Nautilus to reimbursement if it incorrectly chooses to defend a suit for which it did not owe a duty to defend. Nautilus drafted this complicated insurance contract, and it certainly could have included a provision that provides for recoupment of costs spent if a court later determines that it never had a duty to defend its insureds. Therefore, because Nautilus drafted the insurance contract and because insurance contracts are contracts of adhesion, we must construe the insurance contract's silence on recoupment against Nautilus. *Farmers Ins. Grp.*, 110 Nev. at 67, 867 P.2d at 391. Furthermore, the plain language of the contract provides that both Nautilus and the insured must approve any amendments to the contract.[5] Therefore, Nautilus may not use a reservation of rights letter to unilaterally create new rights for itself at the expense of the insured.[6] *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526,

---

[5]The majority, again relying upon *Fontainebleau*, 127 Nev. at 953, 267 P.3d at 793, ignores the contract's express language that precludes Nautilus from unilaterally amending the insurance contract. Here, the order certifying question makes no mention of the contract's amendment clause. Therefore, relying on this express contract language does not contradict anything in the certifying court's order.

[6]Our decision in *Century Surety Co. v. Andrew*, 134 Nev. 819, 432 P.3d 180 (2018), is not to the contrary. There, we noted that an "insurer can always agree to defend the insured with the limiting condition that it does not waive any right to later deny coverage based on the terms of the insurance policy under a reservation of rights." 134 Nev. at 822 n.4, 432 P.3d at 184 n.4. First, our comment concerned the denial of coverage and did not contemplate reimbursement of costs that the insurer incurred

539 (Pa. 2010) (noting that several courts have found "that a unilateral reservation of rights letter cannot create rights not contained in the insurance policy itself"); *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 45 (Tex. 2008) (stating that an insurer "could only reserve rights that were expressed in the policy"); *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 515 (Wyo. 2000) (rejecting the ability of an insurer to modify an existing contract through a reservation of rights letter). Accordingly, Nautilus is not entitled to reimbursement based on a reservation of rights theory.

This position is consistent with a growing number of jurisdictions that reject *Scottsdale Insurance*.[7] The Supreme Court of Pennsylvania succinctly summarized the rationales that it and other jurisdictions relied on in so doing. *Am. & Foreign Ins. Co.*, 2 A.3d at 538-39.

First, reimbursing an insurer for costs it expended defending a claim that is not potentially covered by the terms of the insurance contract

___

defending its insured. Second, our comment is clear that a reservation of rights in the context of an insurance contract preserves *existing* rights contained within the insurance contract. *See Reservation-of-rights letter, Black's Law Dictionary* (11th ed. 2019) (defining a reservation-of-rights letter as "notice of an insurer's intention not to waive its *contractual rights* to contest coverage or to apply an exclusion that negates an insured's claim" (emphasis added)).

[7]This position is also consistent with the Restatement of Liability Insurance section 21 (Am. Law Inst. 2019) (providing that "an insurer may not obtain recoupment of defense costs from the insured, even when it is subsequently determined that the insurer did not have a duty to defend or pay defense costs," unless the right to recoupment is "stated in the insurance policy or otherwise agreed to by the insured").

"is inconsistent with the broad duty to defend." *Id.* at 538-39. The majority's position will narrow this broad duty to defend by making it contingent upon a subsequent judicial determination rather than whether there is potential for liability. Here, Nautilus had *some* doubt as to whether the insureds' claim was covered. Otherwise, it would have simply declined to defend the insureds without worrying about the risk of breaching the insurance contract. While this may be a difficult decision, "it is a decision the insurer must make" in the first instance. *Am. & Foreign Ins. Co.*, 2 A.3d at 542. After all, "[i]nsurers are in the business of making this decision." *Id.* Once the insurer chooses to defend, it is bound by that decision until it obtains a declaratory judgment terminating the duty to defend. *Id.* I recognize it has now been determined by the federal court that Nautilus never had a duty to defend here, but the retroactive imposition of a recoupment obligation on the insureds would limit the benefit it contracted for pursuant to the duty to defend.

Second, when an insurer chooses to defend a claim that the insurance contract may not cover, it "voluntarily under[takes] the defense for its own interest," even though it may have made the payments "under some rudimentary form of protestation." *Id.* at 539. Specifically, "the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach." *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 460 (Wash. 2007). Therefore, the insurer is not defending for the benefit of the insured, thus justifying reimbursement; instead, it is doing so to protect itself from potentially greater liability if it is found to have breached its duty to defend. Having weighed those risks and determined the balance favored defending, it

SUPREME COURT
OF
NEVADA

(O) 1947A

should not be able to then reallocate those costs to the insured once it gets a favorable court declaration.

Third, "concerns of equity and fairness weigh against reimbursement, because an insurer benefits unfairly if it can hedge on its defense obligations by reserving its right to reimbursement while potentially controlling the defense and avoiding a bad faith claim." *Am. & Foreign Ins. Co.*, 2 A.3d at 539. Here, insureds were precluded by the terms of the insurance policy from having any control over the defense of their claim. Under the majority's position, an insurer may defend under a reservation of rights, amass a substantial legal bill, obtain a declaratory judgment absolving the duty to defend, and then seek to recoup the costs of the defense from the insured. Such a rule does not comport with our long-standing recognition of the inherent power disparity between insurers and insureds. *Ins. Co. of the W. v. Gibson Tile Co., Inc.*, 122 Nev. 455, 461-62, 134 P.3d 698, 702 (2006).

Accordingly, the majority's position should not be the rule in Nevada, as it is contrary to our precedent governing contractual relationships generally and insurance relationships in particular. Instead, the default rule should be that an insurer is not entitled to a recoupment of defense costs under these circumstances, unless such recoupment is explicitly provided for in the insurance policy.[8] Having recognized the

---

[8]The following passage further supports adopting this rule:

> First, because this rule is merely a default, if it turns out that the recoupment rule would be relatively easy to administer or that the costs justify the expense, insurers can incorporate an

disparity in bargaining power between an insurer and insured, providing this remedy to the insurer—this remedy for which it did not contract—is utterly inconsistent with our established Nevada law.  Based on the foregoing, I respectfully dissent.

_____, J.
Cadish

We concur:

_____, J.
Parraguirre

_____, J.
Silver

---

express right to recoupment in their policies. Second, situating the right to recoupment in the insurance policy carries significant advantages; it puts the legal basis of the insurer's entitlement beyond dispute, and it specifies the contours of that entitlement in advance of a dispute, making it easier to evaluate for all parties concerned.  Third, a default rule of no recoupment places the burden of contracting around the rule on the party best able to do so.

Restatement of Liability Insurance § 21 cmt. a (Am. Law Inst. 2019).