Harvey P. WALKER, Plaintiff,

v.

AMERICAN ICE COMPANY

and

Aetna Casualty & Surety Company, a corporation, Defendants.

Civ. A. No. 2071–59.

United States District Court
District of Columbia.

June 15, 1966.

Justin L. Edgerton, Washington, D.C. for garnishor, Aetna Casualty & Surety Co.

Douglas A. Clark, Vienna, Va., for garnishee, National Union Fire Ins. Co. of Pittsburgh.

## MEMORANDUM

KEECH, District Judge.

This action is before the court on an attachment issued by the American Ice Company, as garnishor, against National Union Fire Insurance Company of Pittsburgh as garnishee. The attachment arose out of the refusal of National Union to pay a judgment in favor of American Ice Company against Delbert J. Scott for $30,000.00 and costs of $43.00. Resolution of the issue presented will require a determination as to whether, on the facts set out below, the garnishee is precluded from asserting a provision of an insurance contract with Scott's employer, W. W. Chambers, which would exclude coverage of Delbert J. Scott. The facts have been stipulated to by the parties.

An automobile accident which occurred on March 4, 1958, gave rise to the original litigation. The accident involved a truck, owned and operated by the American Ice Company, and an ambulance owned by W. W. Chambers Company and operated by Delbert J. Scott in which Harvey P. Walker was riding as an attendant. Both Scott and Walker were employees of Chambers. As a result of the accident both were injured.

Thereafter, two suits were filed. Harvey P. Walker brought suit against the American Ice Company for damages arising from the accident. National Union Fire Insurance Company of Pittsburgh, the liability and workmen's compensation insurer of W. W. Chambers, joined in Walker's suit against American Ice Company for an amount to which they were subrogated by reason of workmen's compensation and medical payments made to Walker as a result of the accident. In the second suit, Delbert J. Scott similarly sought damages from American Ice, and again National Union joined as plaintiff. E. Willard Hyde, Esq., was attorney for the plaintiffs in both cases. During pendency of both cases, Ernest C. Raskauskas entered his appearance as attorney for the plaintiffs. The two suits were consolidated for pretrial and trial.

On April 16, 1962, in the *Walker* case, American Ice Company moved for leave to file a third-party complaint against Delbert J. Scott seeking contribution on the theory that he was jointly liable with the driver of the American Ice truck for the injuries sustained by Walker. The motion was granted. On September 6, 1962, an answer to the third-party complaint was filed on behalf of the third-party defendant Scott by Messrs. Hyde and Raskauskas, as his attorneys. On September 19, 1962, a supplemental pretrial hearing was held concerning the issues raised by the third-party complaint and answer, in which Mr. Raskauskas participated as attorney for the third-party defendant Scott. The consolidated cases were called for trial in this court before Judge Pine on November 6, 1962,

and on November 14 trial was concluded. Both Mr. Hyde and Mr. Raskauskas actively defended Scott as third-party defendant in the trial, as well as trying both cases for the plaintiffs. The verdict of the jury in the *Walker* case was for the plaintiffs for $60,000.00 and on the third-party complaint for the third-party plaintiff, American Ice Company, for contribution against third-party defendant Scott. In the *Scott* case, the verdict of the jury was for the defendant American Ice Company. Post-trial motion in the *Walker* case was made and denied, and on January 31, 1963, a praecipe was filed entering the judgment for plaintiffs Walker and National Union Fire Insurance Company against American Ice Company as fully paid and satisfied.

On February 8, 1963, a judgment was entered by Judge Pine on the verdict in favor of third-party plaintiff American Ice Company against third-party defendant Delbert J. Scott for $30,000.00 and costs of $43.00.

On the date of the accident, March 4, 1958, the Cadillac ambulance here involved was owned by W. W. Chambers Company and insured for public liability by Policy No. AC750826, issued by National Union Fire Insurance Company of Pittsburgh on December 15, 1957. A specimen copy of this policy is stipulated. The "Insuring Agreements" of this policy contain the following provision:

"III. Definition of Insured: * * The insurance with respect to any person or organization other than the named insured or such spouse does not apply:

* * * * * *

"(2) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

National Union Fire Insurance Company refused to pay the judgment against

Scott, and on March 8, 1963, the instant attachment was issued by third-party plaintiff American Ice Company against National Union Fire Insurance Company of Pittsburgh as garnishee. The garnishee thereafter made the following answers to the interrogatories on this attachment (the court has omitted a number of the interrogatories):

" * * * * * *

"3rd. Had you at the time of the accident of March 4, 1958 an automobile liability policy issued to W. W. Chambers Co. covering the operation of the Cadillac ambulance involved in such accident? If so, state the number, date issued and policy limits.

"Answer: Yes. Policy No. AC 750826 issued December 15, 1957. Our attorney advises us that we do not have to disclose policy limits.

"4th. Did the policy referred to in Question 3 extend insurance coverage to employees of W. W. Chambers Co. operating automobiles belonging to said assured and operated in the course of its business and with its consent?

"Answer: Yes, but said policy does not cover an employee's negligence causing injury to fellow employee.

"5th. Pursuant to the provisions of the policy referred to in Questions 3 and 4, did you extend to third-party defendant Delbert J. Scott a defense to the claims asserted by the third-party complaint herein?

"Answer: We did not authorize a defense for Scott. We permitted counsel to defend Scott upon his representation that there was no conflict of interest involved.

"6th. If the answer to Interrogatory No. 5 is in the affirmative, state whether such defense was extended under any form of reservation of rights, non-waiver agreement, or any other such disclaimer of liability.

"Answer: It was not, since we did not cover Scott for his negligence causing injury to a fellow employee.

* * * * * *

"8th. Did you engage or retain counsel to represent third-party defendant Delbert J. Scott in the defense of said third-party complaint? If so, whom did you engage and when?

"Answer: We did not engage counsel. We permitted E. Willard Hyde, Esquire, to defend Scott upon his representation that there was no conflict of interest involved. Mr. Hyde was so advised in October of 1962.

* * * * * * "

On April 11, 1963, third-party plaintiff American Ice Company filed a traverse to these answers.

At a hearing before this court on March 23, 1966, Aetna Casualty and Surety Company was made a party to these attachment proceedings by praecipe filed on that date. In fact, Aetna Casualty and Surety Company, the liability insurance carrier of American Ice Company, is the only party who has any interest in the attachment proceedings before this court.

Together with the above agreed facts (which the court has taken the liberty of abbreviating) counsel submitted copies of the correspondence between National Union Fire Insurance Company of Pittsburgh and E. Willard Hyde, Esq. Counsel for the garnishee argues that the contents of this correspondence are privileged as communications between an attorney and his client. The court must reject this contention. In so far as the letters are relevant, they involve inquiries on the part of Mr. Hyde as to whether he could represent Scott in Scott's capacity as a third-party defendant, in addition to his representation of Scott as plaintiff. The only legal expertise contained therein is the statement that there would be no conflict of interest in representing Scott in this dual capacity, and that therefore retention of further counsel by National Union would be unnecessary. National Union's replies were not made for the purpose of obtaining a more exact and complete knowledge of its rights and duties, but were rather in the form of a permission

or instruction, the purport of which the court will discuss later in this opinion. By their very nature, these instructions, when carried out, would become public. It has been held that the rule as to privileged communications does not exclude evidence as to the instructions or authority given by the client to his attorney to be acted upon by the latter. Willard C. Beach Air Brush Co. v. General Motors Corp., 118 F.Supp. 242 (D.N.J., 1953), aff'd 214 F.2d 664 (3rd Cir., 1954); 97 C.J.S. Witnesses § 287 (1957). See Catalog Ass'n v. A. Eberly's Sons, Inc., 60 App.D.C. 216, 50 F.2d 981 (1931). Upon this basis the court will hold the letters to be admissible.

Analysis of counsel's Agreed Statement of Facts, the pretrial stipulations, the interrogatories, and the submitted correspondence between National Union and Mr. Hyde lead the court to conclude that, in defending Scott in his capacity as third-party defendant, Hyde and his associate counsel Raskauskas were acting in accordance with the directions of National Union, as that Company's attorneys. It follows, therefore, that National Union, through these attorneys, rendered Scott a defense in his capacity as third-party defendant. Counsel for the garnishee National Union contends that Hyde never asked for authority to defend Scott in his (Hyde's) capacity as attorney for National Union, but rather merely sought to defend Scott as Scott's retained counsel. The letters belie this contention. The first of the submitted letters is from Mr. Hyde to National Union, dated October 1, 1962, and addressed to Mr. Cosmos Reale. Mr. Hyde refers to his unanswered letter of May 9, 1962, to National Union, in which he informed National Union that Scott had been brought into the case as a third-party defendant. The letter contains the following statements:

"* * * in the event there is a finding in this case for the plaintiffs Scott as the third party defendant should share part of the losses, *which would ordinarily entitle him to an attorney furnished by the assured's insurance carrier,* * * *.

"After giving this case much thought, we are of the opinion that there is no conflict of interest in this case as Walker's and Scott's testimony will be the same and, therefore, there is no need to obtain further counsel as we can represent Scott as the plaintiff as well as the defendant when the facts are analogous. * * *"

The court believes a fair reading of the above indicates that Mr. Hyde was unaware of the clause which would preclude coverage of Scott, that he believed Scott in his capacity as third-party defendant was entitled to an attorney furnished by W. W. Chambers' insurance carrier, and that Hyde felt he could serve in this capacity as well as that of attorney for the plaintiffs. This reading is confirmed by Mr. Hyde's letter of October 12, in which he again pressed for an answer to his still unanswered query concerning the defense of Scott. In the October 12th letter Hyde states:

"* * * We do not want to be placed in a position where Scott would have to share a judgment which would be over and against the carrier for W. W. Chambers Company without the consent of the company that we represent Scott."

This letter also went unanswered, and Hyde wrote again on October 17th requesting a reply. On October 24, 1962, National Union replied to Hyde in the person of Mr. Lloyd G. Amberson. Mr. Amberson stated he had discussed the matter with the Eastern Zone Claim Manager, Mr. Cosmos Reale, and that: "It has been agreed you may render a defense to Scott in the present pending matter of Scott and Walker vs. American Ice Company and D. C. Transit System." This statement was immediately followed by the statement, in a new paragraph: "This Company afforded liability coverage to the W. W. Chambers Company, Inc., under Policy No. AC 750826." In the following paragraph appears the statement: "* * * any additional fee incurred as a result of de-

fending under the liability exposure should be submitted to the Company separate from the compensation arrangements." Following this letter, which the court believes is determinative when read in the context of Mr. Hyde's previous letters, Hyde wrote three times to Mr. Amberson, all for the purpose of keeping the Company informed as to the progress of the suit and as to the monies which had been expended. On November 14, 1962, Mr. Hyde wrote Mr. Amberson to inform him of the results of the suit. The jury had found for the defendant American Ice Company in Scott's case, and had found in favor of Walker for $60,000.00, against American Ice, and against Scott as third-party defendant, in Walker's action against American Ice. Scott would therefore be required to pay one-half of the $60,000.00 judgment—$30,000.00. Later in the letter Mr. Hyde states: " * * * as per your letter of October 24, 1962 we defended Scott as the third party defendant being of the belief, and the court concurred, that there was not a conflict of interest." Hyde further stated therein that:

" * * * Although the interests of National Union, Scott, and Walker were harmonized in the prosecution of this case, the jury has separated these interests in its finding for Walker against Scott. Therefore, we could not represent Scott further either as a plaintiff or third party defendant in a motion for new trial or an appeal. In the event that Scott wishes to appeal as an individual, it will be necessary for him to select other counsel and in the event that the company wishes to prosecute an appeal either as to the subrogation interest as the plaintiff in Scott's case or on his behalf as the third party defendant, it will also be necessary to select other counsel for further representation.

* * * * * * "

Mr. Hyde received in reply to this a letter dated November 16, 1962, from Mr. C. J. Reale, which expressed agreement with Mr. Hyde's observations on con-

flict of interest and relieved Mr. Hyde as counsel for National Union. Mr. Hyde acknowledged this letter on November 19, 1962. On November 27, 1962, Mr. Hyde again wrote National Union to inform it of the post-trial motions made on behalf of the defendant, American Ice. The letter goes on to discuss Scott's position:

" * * * since we are not representing him, he would have to get his own counsel as he had been found guilty by the jury of contributory negligence and one half of the verdict would go against Scott which is eventually The National Union Fire Insurance Company of Pittsburgh, Pennsylvania. * * *

"I am also enclosing to you our bill for the defense only of Scott in this case."

Attached to the letter was a bill for $1,225.00 bearing the heading "Fee for Representation of Delbert J. Scott, Third Party Defendant". In reply to this came a letter from C. J. Reale dated December 7, 1962, which, after thanking Mr. Hyde for his letter and his interest, stated the following:

"We regret that we cannot honor your bill in the amount of $1,225 for the defense of Scott. As you have been aware, the National Union Fire Insurance Company does not insure Scott or extend any coverage to him in connection with this case and, consequently, we are at a loss to follow the rationale you have employed in your aforementioned letter."

The court believes the purport of the above letter is in total variance with Mr. Amberson's letter of October 24th, which, read against the background of Mr. Hyde's letters, amounts to an unambiguous direction to defend Scott. Certainly if the purpose of the October 24th letter was merely to approve of Mr. Hyde's taking Scott on as his own client, there would have been no need to mention the insurance policy held by W. W. Chambers. Mr. Hyde's subsequent letters and the bill he submitted all indicate he be-

lieved he was defending Scott as attorney for National Union. Concluding, then, that Hyde was acting as attorney for National Union when he defended Scott in Scott's capacity as third-party defendant, the issue now becomes whether, by rendering this defense, National Union has precluded itself from asserting the exclusionary clause in the policy which clearly puts Scott's injuries to Walker, his fellow employee, outside the coverage of the policy.

The doctrines of law which the court must apply in resolving the issue are burdened with labels which are often misleading. The cases variously use the terms "waiver", "estoppel", or both. The particular precedent which controls in this case, as it has developed, properly involves neither "waiver" nor "estoppel" as those terms are used in other fields of the law. With this in mind, the most fruitful approach is to ascertain what factors the cases have required to be present before they have invoked what has variously been called "waiver" or "estoppel" to preclude the insurer involved from asserting the full provisions of the insurance contract, and then examine the instant case to see if those factors are present.

 There is a well established doctrine that waiver and/or estoppel cannot be used to extend the coverage or the scope of the policy:

"* * * The rule is that while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage or restrictions on the coverage cannot be extended by the doctrine of waiver or estoppel. * * *

"* * * The doctrine of waiver cannot be invoked to create a primary liability * * *." C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 101 F.2d 739, 742 (5th Cir., 1939).

See also United Pac. Ins. Co. v. Northwestern Nat. Ins. Co., 185 F.2d 443 (10th Cir., 1950); Bourne v. Seal, 53 Ill.App. 2d 155, 203 N.E.2d 12 (App.Ct., 1964);

113 A.L.R. 857, 888 (1933). To this rule there is an equally well established exception, which is stated in its most accepted form in American Jurisprudence:

"* * * if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. * * *" 29A Am. Jur., Insurance § 1465 (1960).

See Insurance Co. of No. Am. v. Atlantic Nat'l Ins. Co., 329 F.2d 769, 775 (4th Cir., 1964).

This rule finds its origin in a number of cases decided just after the turn of the century. Thus, in Employers' Liab. Assur. Corp., of London, England v. Chicago & B. M. C. & C. Co., 141 F. 962 (7th Cir., 1905), a case which involved a contract that indemnified an employer-insured against loss from statutory or common law negligence, but excepted therefrom injuries resulting from the failure of the insured to observe any statute affecting the safety of persons, the court held that where the insurer, with full knowledge of the facts, conducted the defense in the name of the insured, such action constituted a contemporaneous construction of the policy, which estopped the insured from thereafter denying its liability on the ground that the case was not in the terms of the policy. This case was closely followed in Empire State Sur. Co. v. Pacific Nat. Lumber Co., 200 F. 224 (9th Cir., 1912). The same rule was invoked in Fairbanks Canning Co. v. London Guar. & Acc. Co., 154 Mo.App. 327, 133 S.W. 664 (Kansas City Ct. of App., 1911). The policy in that case contained a noncoverage provision for children employed by the insured who were under the legal age of employment. The court held that the assumption of the defense of the insured precluded the insurer from later showing facts which would put the event outside

of the coverage of the policy where the insured had given to the insurer all information they had on the subject and investigation of the matter would have revealed the true posture of the case. Significantly, the court further held that the loss of a right to control and manage one's own case was in itself prejudicial:

" * * * Who can say what plaintiff might have done in its own behalf had it not been ousted from control and direction of the defense * * * ? If a man is to bear the burden of the result of a defense to an action, it is his privilege to have his own personality appear in its course. He is entitled to have the results measured up to him, and not to some other. * * " 133 S.W. at 667.

The holdings of these early cases have been followed without significant divergence. In the case of Pendleton v. Pan American Fire and Cas. Co., 317 F.2d 96 (10th Cir., 1963), an explosion caused the loss. After making a thorough investigation of the explosion, and with full knowledge of the contents of its policy and of claims against its insured, the insurer assumed complete control of the insured's defense in the suits brought against him. It at no time notified him of any reservation of rights. The court held that by such conduct the insured was induced to relinquish control of his defense and that the insurer was estopped to deny its liability under the policy. The court observed that, by the weight of authority, it is not necessary for the insured to show prejudice in such a situation because he is presumed to have been prejudiced by virtue of the insurer's assumption of the defense, citing Schmidt v. Nat'l Auto. & Cas. Ins. Co., 207 F.2d 301, 38 A.L.R.2d 1142 (8th Cir., 1953). The excellent opinion in Ebert v. Balter, 83 N.J.Super. 545, 200 A.2d 532 (Union Cty.Ct., Law Div., 1964), further illustrates the present posture of the law. That was a dramatic case of noncoverage. The insured event occurred one day before the insurance contract came into effect. In spite of the fact that the insurer obtained a very generally worded waiver of rights, the court held that the company, which had received conflicting information as to the day the accident occurred, was negligent in failing to ascertain the correct date, and that, therefore, by investigating and assuming defense of the claim against the insured for thirty-one months before it withdrew, the insurer became liable to the insured for the amount of the judgment entered against the insured and for the insured's subsequent expenses in defending against the claim. Salerno v. Western Cas. & Sur. Co., 336 F.2d 14 (8th Cir., 1964), again involved a noncoverage situation. Ten months after the insurer had assumed the defense of the insured, it discovered that the injury-producing activity was of such a character as to put it outside the coverage of the policy. The Eighth Circuit, applying Missouri law, found the insurer was estopped from asserting the noncoverage, putting considerable emphasis on the fact that, within just a few days after the event took place, the insurer had equal knowledge and means of knowing the true nature of the risk-producing activity.

■■ National Union defended Scott without any reservation of rights. It knew of Scott's position as a fellow employee of the injured plaintiff Walker. It was charged with knowledge of the contents of its policy. General Tire Co. of Minneapolis v. Standard Acc. Ins. Co., 65 F.2d 237, 240 (8th Cir., 1933). The fact that there has been no showing that Scott was prejudiced by the defense is immaterial, as such prejudice is presumed as a matter of law by the great weight of authority. Thus, while the doctrinal requirements for the working of either a waiver or an estoppel may not be fulfilled, the requirements for the working of a preclusion to assert the policy terms, as those requirements are set out by the great weight of authority, are unquestionably present. The court therefore holds that National Union is precluded from asserting the exclusionary clause here involved. It follows that the garnishor, Aetna Casualty and Surety

Company, is entitled to a judgment against National Union Fire Insurance Company of Pittsburgh in the amount of Thirty Thousand and Forty-three Dollars ($30,043.00).

This memorandum shall constitute findings of fact and conclusions of law.