139 Nev., Advance Opinion 45

IN THE SUPREME COURT OF THE STATE OF NEVADA

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE, IN TRUST
FOR THE REGISTERED HOLDERS OF
MORGAN STANLEY ABS CAPITAL I
TRUST 2004-HE8, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2004-HE8,
Appellant,
vs.
FIDELITY NATIONAL TITLE
INSURANCE COMPANY,
Respondent.

No. 84161

FILED

OCT 12 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to dismiss, certified as final under NRCP 54(b), in an insurance matter. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

Wright, Finlay & Zak, LLP, and Darren T. Brenner and Lindsay D. Dragon, Las Vegas,
for Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP and Scott M. Reddie and Michael A. Pintar, Fresno, California; Early Sullivan Wright Gizer & McRae LLP and Scott E. Gizer and Sophia S. Lau, Las Vegas,
for Respondent.

Hutchison & Steffen, PLLC, and Joseph C. Reynolds, Reno,
for Amicus Curiae American Land Title Association.

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, CADISH, J.:

In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, we recognized that NRS 116.3116 designates a portion of an HOA's lien for assessment obligations as senior to a first deed of trust, and if this "superpriority piece" is foreclosed upon, it "extinguish[es] the first deed of trust." 130 Nev. 742, 747, 334 P.3d 408, 412 (2014), *superseded by statute on other grounds as stated in Saticoy Bay LLC 9050 W Warm Springs 2079 v. Nev. Ass'n Servs.*, 135 Nev. 180, 444 P.3d 428 (2019). At issue in this appeal is whether, following such a foreclosure, the first deed of trust holder may recover for its loss of interest in the property by making a claim on its title-insurance policy. The underlying dispute arose when an insurer denied coverage as to such a claim, prompting the first deed of trust holder to file a complaint for breach of contract and related claims. The district court dismissed the complaint, determining that there was no coverage and that each of the claims fails as a matter of law.

As the district court reasoned, an HOA does not have an existing, enforceable lien for assessment obligations until the assessment obligation becomes due, but here the superpriority HOA assessment lien that extinguished the insured's deed of trust arose post-policy, and the losses resulting from the enforcement of that post-policy superpriority assessment lien do not fall within the coverage provided under the title-

---

[1]The Honorable Patricia Lee, Justice, is disqualified and did not participate in the decision of this matter.

insurance policy that the insured relies on in its complaint. Because we conclude that the insured's losses resulted from the enforcement of a superpriority lien, governed exclusively by NRS 116.3116, the fact that the HOA's covenants, conditions, and restrictions (CC&Rs) established the assessment obligation that later became delinquent and enforceable by a lien on the property does not create coverage under the policy. Accordingly, we affirm the dismissal of the insured's claims.

FACTUAL AND PROCEDURAL BACKGROUND

*Extinguishment of Deutsche Bank's deed of trust*

Appellant Deutsche Bank National Trust Company obtained a deed of trust to real property by assignment from nonparty New Century Mortgage Corporation. This deed of trust served as security for a loan provided by New Century to nonparties James and Sharon Lutkin in May 2004. Respondent Fidelity National Title Insurance Company issued a title-insurance policy to New Century and its assigns. The Lutkins' real property was part of Mira Vista Homeowners Association (Mira Vista HOA), which was established pursuant to a declaration of CC&Rs recorded in 1995. After the Lutkins became delinquent on their annual HOA assessments in 2011, Mira Vista HOA proceeded with a nonjudicial foreclosure in August 2012, at which nonparty G&P Investments Enterprises, LLC purchased the property. G&P sold the property to nonparty TRP Fund VI, LLC in July 2016.

Shortly before TRP obtained title to the property, Deutsche Bank sued G&P for a declaratory judgment that its deed of trust survived the foreclosure. After being added as a party, TRP counterclaimed for quiet title, arguing that the nonjudicial foreclosure of Mira Vista HOA's assessment lien extinguished Deutsche Bank's interest in the property.

Ultimately, title was quieted in TRP's favor, and Deutsche Bank reconveyed the deed of trust in a settlement.

*Denial of coverage under the title-insurance policy*

Around the same time as the TRP litigation, Deutsche Bank submitted a claim under the Fidelity title-insurance policy seeking defense and indemnification. The policy insures any losses "sustained or incurred by the insured by reason of . . . [a]ny defect in or lien or encumbrance on the title" or "[t]he priority of any lien or encumbrance over the lien of the insured mortgage [upon the title,]" among other situations.

The policy also incorporates several standard provisions, including the two endorsements at issue in this matter, developed by the American Land Title Association (ALTA)[2] and the California Land Title Association (CLTA), both trade associations comprised of title-insurance agents, issuers, underwriters, and other entities. CLTA 115.2(2), the first endorsement, insures losses sustained "by reason of . . . [t]he priority of any lien for charges and assessments at Date of Policy in favor of any [HOA] . . . over the lien of [the] insured mortgage." CLTA 100(1)(a), the second endorsement, provides coverage for losses sustained "by reason of . . . [t]he existence of any . . . [CC&Rs] under which the lien of the mortgage . . . can be cut off, subordinated, or otherwise impaired." Moreover, CLTA 100(2)(a) covers losses sustained

> by reason of . . . [a]ny future violations on the land of any [CC&Rs] occurring prior to acquisition of title to the estate or interest . . . by the insured, provided such violations result in impairment or loss of the lien of the mortgage . . . , or result in impairment or loss of the title to the estate or interest . . . if the insured shall acquire such title in

---

[2]ALTA is an amicus curiae in this matter.

satisfaction of the indebtedness secured by the insured mortgage.

However, the policy provides disclaimers stating that the endorsements are "made a part of the policy" and are "subject to all of the terms and provisions thereof and of any prior endorsements thereto." The disclaimers further provide that "[e]xcept to the extent expressly stated," the endorsements "neither modif[y] any of the terms and provisions of the policy, nor . . . extend the effective date of the policy and any prior endorsements, nor . . . increase the face amount thereof."

Ultimately, Fidelity denied Deutsche Bank's claim. Fidelity maintained that Mira Vista HOA did not record its assessment lien against the property until more than seven years after the date of policy. Moreover, because the events that resulted in the extinguishment of Deutsche Bank's interest in the property occurred after the date of policy, Fidelity concluded that the claim did not fall within the insuring provisions of the policy but, rather, fell within the exclusions of the policy. Fidelity also determined that CLTA 100 did not provide coverage because no provision in the Mira Vista HOA's CC&Rs allowed for Mira Vista HOA's encumbrances to take priority over Deutsche Bank's lien. Fidelity explained that Deutsche Bank's loss from the lack of priority instead resulted from (1) unpaid post-policy assessments, (2) the application of NRS 116.3116(2), and (3) this court's interpretation of NRS 116.3116(2). Fidelity concluded that CLTA 100 was not triggered because the priority of the HOA's assessment lien arose due to NRS 116.3116, not Mira Vista HOA's CC&Rs.

Deutsche Bank requested reconsideration of the claim, maintaining that because NRS 116.3116(9) deems the recordation of an HOA's declaration of CC&Rs to constitute record notice and perfection of assessment liens enforced in the future, the assessment liens did not arise

post-policy. For the same reason, Deutsche Bank asserted that CLTA 115.2(2) and CLTA 100 afforded coverage. Finally, Deutsche Bank maintained that because Mira Vista HOA conducted the foreclosure in violation of the CC&Rs, the exclusion in Schedule B(10) for losses incurred by reason of the CC&Rs did not apply.

*Lawsuit challenging denial of coverage*

After Fidelity did not respond to the request to reconsider its claim, Deutsche Bank filed the underlying complaint against Fidelity in the district court, asserting claims for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, deceptive trade practices, and unfair claims practices. Deutsche Bank alleged that CLTA 100 and 115.2 cover the losses it suffered by the foreclosure of Mira Vista HOA's assessment lien because that lien and its superpriority status were created before the policy date by virtue of NRS 116.3116, which had been incorporated into the Mira Vista HOA CC&Rs by the statute in 1991 and by an amended declaration of CC&Rs recorded in 2000. Deutsche Bank alleged that trade manuals, which it attached to its complaint, confirmed that Fidelity and other insurers believed CLTA 100 and 115.2 applied to losses caused by the enforcement of a superpriority HOA assessment lien. Therefore, Deutsche Bank asserted, Fidelity's claim denial and refusal to defend or indemnify Deutsche Bank amounted to breach of the insurance contract and bad faith.

Deutsche Bank also contended that Fidelity violated the Nevada Deceptive Trade Practices Act (NDTPA), codified in NRS Chapter 598, by denying Deutsche Bank's claim under CLTA 100 and 115.2, despite knowingly representing at the policy's issuance that those endorsements afforded coverage in such situations. Finally, Deutsche Bank asserted that Fidelity's claims procedures violated several subsections of NRS 686A.310,

Supreme Court
OF
Nevada

(O) 1947A

6

which specifically pertains to trade practices in the insurance business, based on the allegedly wrongful denial.

*Dismissal of claims*

Fidelity moved to dismiss under NRCP 12(b)(5), arguing that Deutsche Bank's claims failed for the same reasons it cited in denying Deutsche Bank's insurance claim. It also argued that no HOA assessment triggered CLTA 100(2)(a), as assessment obligations did not constitute future violations on the land of any CC&Rs. Because, in Fidelity's view, no potential for coverage existed, it argued that its claim denial did not afford a basis for declaratory relief or amount to breach of the insurance contract, breach of the covenant of good faith and fair dealing, or a violation of unfair claims practices under NRS 686A.310. As to the NDTPA claim, Fidelity asserted that Nevada law prohibits the assignment of NDTPA claims.

Deutsche Bank opposed, making the same arguments it made in seeking reconsideration of the claim denial. It also argued that its losses were covered by CLTA 100(1)(a) because they arose by reason of the existence of NRS 116.3116 and the CC&Rs in tandem as opposed to the former in isolation. Alternatively, Deutsche Bank maintained that the CLTA 100(2)(a) endorsement provided coverage for post-policy violations of the CC&Rs that run with the land, such as the covenant to pay assessments. Because it asserted the policy afforded coverage, Deutsche Bank argued that its claims for breach of contract and breach of the covenant of good faith and fair dealing were viable. It also relied on Fidelity's internal documents in which Fidelity allegedly acknowledged coverage in such situations as rendering its claim denial wrongful and unreasonable. Deutsche Bank contended that its claim under NRS 686A.310 was viable, as insurers may be liable under that statute regardless of the existence of coverage under the policy. Finally, Deutsche Bank asserted that the NDTPA claim was

SUPREME COURT
OF
NEVADA

(O) 1947A

7

assignable, unlike personal-injury tort claims, because the tortious conduct harmed property, not a person.

After a hearing, the district court granted Fidelity's motion as to all claims on the ground that no coverage existed under the policy because NRS 116.3116 unambiguously provided that the Mira Vista HOA assessment lien arose when it became delinquent in 2011 and, therefore, constituted a post-policy lien outside the scope of the Fidelity policy. Declining to look beyond the statute, the district court acknowledged that the HOA's recording of its CC&Rs perfected the assessment lien, but it reasoned that the lien nonetheless came into existence only if the homeowner failed to timely pay the assessment.

The district court further concluded that neither of the endorsements provided coverage. The court interpreted CLTA 115.2(2) as providing coverage for losses suffered because of the priority of any lien for charges or assessments only if the lien existed or arose at the date of policy, and the HOA assessment lien arose post-policy when the annual assessment became delinquent in 2011. Next, the district court reasoned that because CLTA 100 did not expressly mention HOA assessment liens, it did not cover losses from such liens. But, alternatively, even if CLTA 100 extended to HOA assessment liens, the district court reasoned that Deutsche Bank's losses did not arise by reason of the Mira Vista HOA's CC&Rs but by reason of the provisions of NRS 116.3116. Therefore, neither subsection of CLTA 100 was triggered. Further, the district court determined that the homeowners' failure to pay the assessment did not constitute a violation on the land and, therefore, did not fit within CLTA 100(2)(a). The district court rejected Deutsche Bank's proffered trade usage

SUPREME COURT
OF
NEVADA

(O) 1947A

evidence because it conveyed an uncommunicated, subjective intent and contradicted an unambiguous contract.

Because it concluded that no coverage existed under the Fidelity policy, the district court dismissed the declaratory judgment and breach-of-contract claims. Although it noted that Fidelity's position was "fairly debatable," it dismissed the bad-faith claim based on its coverage determinations. Next, the district court determined that Deutsche Bank's claim under NRS 686A.310 failed because there was no wrongful denial of coverage. Finally, the district court concluded that the prohibition against the assignment of tort claims extended to the NDTPA claim. The court denied Deutsche Bank leave to amend based on futility. This appeal followed.

## DISCUSSION

### Standard of review

We review a dismissal under NRCP 12(b)(5) de novo. *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). Dismissal under NRCP 12(b)(5) is appropriate only "if it appears beyond a doubt that [the plaintiff] could prove no set of facts" that, if true, entitle the plaintiff to relief. *Id.* We accept all factual allegations in the complaint as true and construe all inferences in its favor. *Id.* Although "[a]s a general rule" a court does "not consider matters outside the pleading being attacked," it "may take into account matters of public record, orders, items present in the record of the case, and any exhibits attached to the complaint when ruling on [an NRCP 12(b)(5)] motion to dismiss." *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 847, 858 P.2d 1258, 1261 (1993).

### Fundamentals of a title-insurance policy

Under Nevada law, title insurance is intended to insure against loss or damage suffered by "defects in, or the unmarketability of, the title to

the property." NRS 681A.080(1). A title insurer agrees to indemnify the insured if the insured suffers a loss caused by defects or encumbrances on the title when ownership or interest is transferred to another. *See Karl v. Commonwealth Land Title Ins. Co.*, 24 Cal. Rptr. 2d 912, 915 (Ct. App. 1993).

The insurer issues a policy "on the basis of, and in reliance on, the quality of its own investigation" into a title. *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 521 (Cal. 1998). Unlike other types of insurance, such a policy typically "does not insure against future events" and "is not forward looking." *Id.* Therefore, generally, title-insurance "policyholders are only protected against defects, liens or encumbrances in existence when they take title, and are not insured against defects which may arise later." *Rosen v. Nations Title Ins. Co.*, 66 Cal. Rptr. 2d. 714, 720 (Ct. App. 1997). To this end, the California Supreme Court has held that "there is no implied agreement [for an insurer] to go beyond the conditions existing at the time the policy is issued and to assume a general liability to indemnify against future incumbrances." *Rice v. Taylor*, 32 P.2d 381, 384 (Cal. 1934).

*The claims for declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing were properly dismissed*

Deutsche Bank contends that three of the policy's endorsements, CLTA 115.2, CLTA 100(1)(a), and CLTA 100(2)(a), provide coverage for its losses. We address each of those endorsements below.[3]

---

[3]An endorsement to an insurance policy generally either "provide[s] affirmative coverage for facts that exist in a transaction which standard title insurance policies have not traditionally addressed" or "modif[ies] the effect of preprinted policy exclusions or exceptions." 1 Joyce Palomar, *Title Insurance Law* § 9:1 (2022 ed.); *see also Frontier Oil Corp. v. RLI Ins. Co.*,

"Insurance policies are, of course, contracts, and they are treated like other contracts." *Nautilus Ins. Co. v. Access Med., LLC,* 137 Nev. 96, 99, 482 P.3d 683, 687 (2021). Thus, we enforce the plain meaning of an insurance policy. *Century Sur. Co. v. Casino W., Inc.,* 130 Nev. 395, 398, 329 P.3d 614, 616 (2014). "And we consider the policy as a whole 'to give reasonable and harmonious meaning to the entire policy.'" *Id.* (quoting *Siggelkow v. Phoenix Ins. Co.,* 109 Nev. 42, 44, 846 P.2d 303, 304 (1993)). Nevertheless, "we interpret an insurance policy 'from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense.'" *Id.* (quoting *Siggelkow,* 109 Nev. at 44, 846 P.2d at 304). And our interpretation of the policy must avoid any "absurd or unreasonable result." *Id.*

Moreover, we broadly construe any clauses that provide coverage and narrowly construe any clauses that exclude coverage. *Id.* While the insured bears the burden to prove coverage under a policy, *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.,* 137 Nev. 651, 656, 497 P.3d 625, 630 (2021), we nevertheless require the insurer to draft a policy exclusion "so that it 'clearly and distinctly communicates to the insured the nature of the limitation'" or the scope of coverage, *Century Sur. Co.,* 130 Nev. at 398, 329 P.3d at 616 (quoting *Griffin v. Old Republic Ins. Co.,* 122 Nev. 479, 485, 133 P.3d 251, 255 (2006)). Additionally, in the face of ambiguity in the policy, we interpret the policy so as to "effectuate the insured's reasonable expectations." *Id.* ("We interpret ambiguities in an insurance contract against the drafter, which is typically the insurer.").

---

63 Cal. Rptr. 3d 816, 838 (Ct. App. 2007) ("An endorsement can expand or restrict the coverage otherwise provided by the policy.").

*Coverage under CLTA 115.2(2)*

Noting that CLTA 115.2(2) only covers losses resulting from the enforcement of a superpriority lien that existed at the date of policy, the parties disagree on how the policy's language applies. Deutsche Bank argues that coverage applies because the lien's priority existed at the date of policy, whereas Fidelity contends that the lien itself must exist by the date of policy. Further, Deutsche Bank contends that under NRS 116.3116 the lien's superpriority is established on the date of the recordation of the HOA's declaration of CC&Rs, not the date of the delinquent assessment. It asserts that CLTA 115.2(2) insured its losses because the recordation of Mira Vista HOA's CC&Rs preceded the date of policy. By contrast, Fidelity argues that under NRS 116.3116 a superpriority assessment lien does not arise until the assessment becomes due and, likewise, does not obtain its superpriority status until that time, both of which occurred here after the date of policy.

As noted, CLTA 115.2 insures losses sustained "by reason of . . . [t]he priority of any lien for charges or assessments at Date of Policy in favor of any [HOA] . . . over the lien of [the] insured mortgage." A natural reading of the endorsement is that rather than modifying the "priority" language, the "at Date of Policy" language modifies the "any lien for charges or assessments" language, as it more closely precedes the "at Date of Policy" language. In other words, the applicability of CLTA 115.2 depends firstly on the existence of an assessment lien at the date of policy. It depends secondly on whether that assessment lien, if in existence at the date of policy, has priority over the insured's mortgage under NRS 116.3116, and if so, whether the foreclosure of the priority piece of that lien caused the insured's losses. We must, therefore, interpret NRS 116.3116 to determine when the statute gives rise to an assessment lien.

We enforce the plain meaning of an unambiguous statute, *see City of Reno v. Yturbide*, 135 Nev. 113, 115-16, 440 P.3d 32, 35 (2019), and interpret sections "in harmony with the statute as a whole," *Branch Banking & Tr. Co. v. Windhaven & Tollway, LLC*, 131 Nev. 155, 158, 347 P.3d 1038, 1040 (2015). In interpreting a uniform act, the official comments and the interpretations of other states that have enacted the act are persuasive. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 744, 334 P.3d 408, 410 (2014). Only in the event of ambiguity, or language that gives rise to more than one reasonable interpretation, do we resort to external sources or the rules of statutory construction. *See Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 731, 100 P.3d 179, 193 (2004).

In 1991, the Nevada Legislature adopted the Uniform Common Interest Ownership Act (UCIOA), codified in NRS Chapter 116, to govern common-interest communities like HOAs. *See Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 404, 215 P.3d 27, 31 (2009). The UCIOA permits an HOA to assess dues on its homeowners' "units," i.e., residences. *See* NRS 116.3102(1)(b); NRS 116.093 (defining "unit"). It also gives the HOA a lien on its homeowners' units for "any assessment levied against that unit or any fines imposed against the unit's owner from the time the . . . assessment or fine becomes due." NRS 116.3116(1); *see also id.* ("If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due."). Recordation of an HOA's "declaration" of CC&Rs "constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment . . . is required." NRS 116.3116(9).

SUPREME COURT
OF
NEVADA

(O) 1947A

13

The UCIOA also establishes the priority of the HOA's assessment lien. As relevant here, NRS 116.3116(2)(b) grants the HOA's assessment lien priority over all other liens, except liens recorded before the HOA's declaration or a "first security interest . . . recorded" after the HOA's declaration but "before . . . the assessment . . . became delinquent," among others. However, the statute grants the HOA's assessment lien "superpriority" over a first security interest for "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges." *SFR Invs. Pool 1*, 130 Nev. at 745, 334 P.3d at 411; *see also* NRS 116.3116(3)(b).[4] Thus, while "all other HOA fees or assessments" remain junior to a first deed of trust, an HOA's foreclosure on its "superpriority piece . . . extinguish[es] the first deed of trust." *SFR Invs. Pool 1*, 130 Nev. at 745, 747, 334 P.3d at 411, 412. Moreover, an HOA may not, in the provisions of its CC&Rs, vary or override the superpriority status granted by law. *See* NRS 116.1104 (prohibiting agreements purporting to vary provisions of the chapter); *see also SFR Invs. Pool 1*, 130 Nev. at 757-58, 334 P.3d at 419 (concluding that a mortgage-savings clause in an HOA's CC&Rs that purported to subordinate the HOA's entire assessment lien to a first security interest did "not affect NRS 116.3116(2)'s application").

We have not previously addressed the point when the assessment lien arises or attaches. Generally, a lien constitutes a "legal right or interest" of a creditor "in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied." *Lien, Black's Law Dictionary*

---

[4]Although we discussed a prior version of NRS 116.3116 in *SFR Investments*, the relevant provisions of the statute have stayed substantially the same since 1991. *See* 1991 Nev. Stat., ch. 245, § 100, at 568 (providing that an HOA assessment lien is prior to a first security interest for the preceding six months of assessment obligations).

(11th ed. 2019); *see* 51 Am. Jur. 2d *Liens* § 1 ("A 'lien' is a security interest in property."). Thus, a lien "presupposes the existence of a debt. If there is no debt in the first instance, there is no need for a lien, so *a lien cannot legally exist or attach.*" 51 Am. Jur. 2d *Liens* § 13 (footnote omitted) (emphasis added). A lien thus does not arise until the debt the lien seeks to secure arises.

Per NRS 116.3116(1), the HOA "*has* a lien" for any assessment "from the time the . . . assessment or fine *becomes due.*" (Emphases added.) In other words, the point when the assessment becomes due (and goes unpaid) is the point when the HOA's assessment lien is created. The statute's use of the phrase "*has* a lien" underscores that the HOA acquires the lien at the time the assessment becomes due. The same subsection further provides that the assessment, if payable in installments as here, "*is* a lien from the time the first installment thereof *becomes due.*" NRS 116.3116(1) (emphases added). Again, the use of "*is* a lien" and the "from the time" the installment/assessment "*becomes due*" language indicates that the debt arises, and accordingly the assessment becomes an enforceable lien, when the first installment becomes due (here, annually). Further, the HOA has only three years from when assessments "become[ ] due" to enforce its "lien for unpaid assessments." *See* NRS 116.3116(10) (extinguishing an assessment lien unless a notice of default and election to sell is filed or judicial proceedings are commenced within three years of the assessment becoming due). This provision supports that the creation of the assessment lien is not linked to its recordation and perfection; instead, it is linked,

logically, to the assessment obligation which goes unpaid.[5] Otherwise, this provision would extinguish the assessment lien (purportedly arising when the CC&Rs were recorded) three years following any assessment becoming due, an absurd result that the Legislature clearly did not intend. In sum, these considerations favor interpreting NRS 116.3116 to give rise to the assessment lien when the assessment obligation becomes due, i.e., is levied and owed.

Nevertheless, the comments to the UCIOA discuss that, as early as 1994, amendments to the section of the uniform act that corresponds with NRS 116.3116(1)[6] "delete[d] the language 'from the time the assessment or fine becomes due' . . . to make clear that the lien was enforceable at the time the assessment became due'. . . . The deletion of the language as suggested makes clear that the lien arises immediately upon . . . recording of the declaration." Unif. Common Interest Ownership Act § 3-116 cmt. 1, at 194-95 (Unif. Law Comm'n 2021). The comments add

---

[5]Generally speaking, the recordation and perfection of a lien does not create the lien but, rather, establishes its priority and enforceability *against other interests* on a property. *See generally Com. Credit Counseling Servs., Inc. v. W.W. Grainger, Inc.*, 840 N.E.2d 843, 848 (Ind. Ct. App. 2006) ("The term 'attachment' encompasses creation of a security interest by execution of a security agreement between the parties, while 'perfection' is an additional step that makes the security interest effective against third parties."). Thus, the provision in NRS 116.3116(9) stating that record notice and perfection of the lien occurs at the recordation of the CC&Rs governs the priority of the lien once it comes into existence, but it does not establish the time of attachment of the lien, which is instead plainly described in NRS 116.3116(1). It also would not make sense to refer to a lien created when the CC&Rs were recorded as a "lien for unpaid assessments." NRS 116.3116(10).

[6]Uniform Common Interest Ownership Act § 3-116(a) corresponds with NRS 116.3116(1).

 

that "[a]s a result of this deletion, it is clear that in the absence of an exception in a title insurance policy for [assessments], a title insurer would be liable for post-insurance obligations which have a priority established prior to the time the policy was issued." *Id.* at 195. Of significance, the "from the time the . . . assessment or fine becomes due" language in NRS 116.3116(1) has never been amended by the Nevada Legislature and thus remains susceptible to the interpretation we have thus far described.[7]

Based on NRS 116.3116's plain language and interpreting its sections in harmony with the statute as a whole, while considering official comments of the UCIOA in tandem with the version of the statute in effect in Nevada, we conclude that the assessment lien arises when the assessment obligation becomes due, i.e., is levied and owed. We acknowledge, as does Fidelity, that the HOA has a perfected inchoate lien from the time it records the CC&Rs. However, the inchoate lien does not become an existing, enforceable lien against a particular unit until assessments are due and unpaid. Our conclusion is based on interpretation of this particular statutory scheme, and we thus offer no opinion regarding when liens arise in other contexts and potential title-insurance coverage for such liens.

---

[7]Our Legislature has not amended NRS 116.3116(1) despite the UCIOA commenters' recommendation to do so nearly 30 years ago. It is not our role to make changes to statutes the Legislature has not elected to make, and we are aware of no authority for the proposition that we should interpret a uniform act based on comments written after the pertinent statute was adopted in Nevada. Moreover, to the extent the motivation for this proposed edit to the portion of the uniform act corresponding to subsection (1) of NRS 116.3116 was to prevent confusion regarding the priority of HOA liens, the provisions of subsections (2) and (3) specifically address those priorities, and our decision today does not change the law in that regard.

SUPREME COURT
OF
NEVADA

(O) 1947A

Here, Mira Vista HOA began the enforcement of its assessment lien in December 2011, meaning that the assessment obligation likely arose in the preceding month. The superpriority piece included only the preceding nine months of assessment obligations. Thus, the assessment lien that ultimately extinguished Deutsche Bank's deed of trust did not exist until roughly seven years after the date of the policy, and by consequence, those losses do not fall within the scope of CLTA 115.2(2).

Even assuming CLTA 115.2(2) requires only that the assessment lien's priority status exist at the date of the policy, the outcome remains the same. The relevant "priority" in CLTA 115.2 refers to the superpriority piece of an assessment lien that may jeopardize the first security interest on the property. True, under NRS 116.3116(9), the assessment lien, once created, is automatically deemed recorded and perfected as of the date the declaration of CC&Rs was recorded. However, its priority over a first deed of trust is an entirely different matter. As we explained in *SFR Investments*, NRS 116.3116 divides the assessment lien into superpriority and subpriority pieces. 130 Nev. at 745, 334 P.3d at 411. The superpriority piece that threatens the first security interest on the property exists only for the unpaid assessments for the nine months preceding the recording of a notice of default. *Id.* By contrast, the subpriority piece exists for all other unpaid assessments. *Id.* Indeed, the starting point is that the assessment lien is junior to a first security interest. *Id.* at 745, 334 P.3d at 410 ("If subsection 2 [now subsection 3] ended there, a first deed of trust would have complete priority over an HOA lien.").

Applying this understanding of NRS 116.3116, Mira Vista HOA's assessment lien attained superpriority status only when the lien arose in 2011 and a notice of default was recorded. Because the priority of

Mira Vista HOA's assessment lien that caused the losses claimed by Deutsche Bank arose roughly seven years after the policy date, CLTA 115.2 would not apply to insure Deutsche Bank's losses even if it was interpreted to depend on the priority of the lien—rather than the existence of the lien—at the date of the policy. Accordingly, there is no coverage for Deutsche Bank under CLTA 115.2(2).

*Coverage under CLTA 100(1)(a)*

As detailed, CLTA 100(1)(a) provides coverage for losses sustained "by reason of . . . the existence of any . . . [CC&Rs] under which the lien of the mortgage . . . can be cut off, subordinated, or otherwise impaired." Under this endorsement, it does not suffice that a covenant imposes an assessment obligation enforceable as a lien. The language "under which the lien of the mortgage . . . can be *cut off, subordinated, or otherwise impaired*" creates a restrictive clause that modifies "CC&Rs." The plain meaning of this clause requires some aspect of the at-issue CC&Rs—here, the covenant for maintenance assessments—to cut off, subordinate, or impair the insured's mortgage. However, no language in the pertinent covenant gives the HOA that authority. To the contrary, the covenant expressly "subordinate[s]" its lien "to the lien of any Eligible Mortgage upon any Lot." Although this mortgage-savings clause remains unaffected by NRS 116.3116, *see SFR Invs. Pool 1*, 130 Nev. at 757-58, 334 P.3d at 419, the clause supports the conclusion that the covenant itself does not provide for the subordination or impairment of Deutsche Bank's deed of trust. Thus, that covenant does not come within the plain meaning of CLTA 100(1)(a).

Deutsche Bank alleges that the enforcement of the superpriority piece of Mira Vista HOA's assessment lien caused its losses. However, NRS 116.3116 created the superpriority piece, as well as the

SUPREME COURT
OF
NEVADA

(O) 1947A

19

ability to enforce that piece and extinguish a first security interest. Without the statute, an HOA's assessment lien, if foreclosed upon, does not precede and extinguish a first security interest. *See SFR Invs. Pool 1*, 130 Nev. at 745, 334 P.3d at 410. This interpretation finds support in our characterization of NRS Chapter 116 as "creat[ing] . . . *statutory liens*," the enforcement of which remain "governed by statute." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 134 Nev. 604, 611, 427 P.3d 113, 120 (2018) (emphasis added). In so stating, we cited with approval secondary authority explaining that statutory liens are "limited in operation, extent, and effect by [the] terms" of the statute and are enforceable "only in the circumstances provided for in the legislation." 53 C.J.S. *Liens* § 14; *accord* 51 Am. Jur. 2d *Liens* § 54; *see also Bank of Am.*, 134 Nev. at 610, 427 P.3d at 120. Because the superpriority assessment lien here constitutes a statutory lien, only NRS 116.3116 governs its creation and effect. It follows that the precise injury Deutsche Bank sustained arose not by the existence of a Mira Vista HOA CC&R, but by the existence of NRS 116.3116. Accordingly, CLTA 100(1)(a) did not cover Deutsche Bank's losses here because (1) there was not a CC&R that cut off, impaired, or subordinated Deutsche Bank's deed of trust, and (2) the superpriority assessment lien that ultimately extinguished Deutsche Bank's deed of trust was a product of NRS 116.3116.

*Coverage under CLTA 100(2)(a)*

As mentioned, CLTA 100(2)(a) insures losses sustained "by reason of . . . [a]ny future violations on the land of any [CC&Rs] occurring prior to acquisition of title to the estate or interest . . . by the insured, provided such violations result in impairment or loss of the lien of the mortgage . . . , or result in impairment or loss of the title to the estate or interest . . . if the insured shall acquire such title in satisfaction of the indebtedness secured by the insured mortgage." The applicability of this

Supreme Court
of
Nevada

(0) 1947A

20

endorsement presupposes that the losses resulted from a future violation of a CC&R, although other caveats exist. However, as we discussed above, the losses resulting from the extinguishment of Deutsche Bank's deed of trust occurred because NRS 116.3116 created a statutory lien for HOA assessments comprised of a superpriority portion that, when foreclosed on, extinguishes a first security interest. Again, without this statute, the failure to pay the assessment obligations, even if resulting in an assessment lien by virtue of the declaration of the CC&Rs, would not extinguish a first security interest. Therefore, the losses arose by reason of NRS 116.3116. Because the losses did not arise by reason of a violation of a CC&R, the policy does not provide coverage under CLTA 100(2)(a).[8]

Accordingly, we affirm the court's dismissal of the claims for declaratory judgment and breach of contract, as the policy does not provide coverage for Deutsche Bank's losses resulting from the enforcement of the superpriority portion of an HOA assessment lien. We likewise affirm the district court's dismissal of the claim for breach of the covenant of good faith and fair dealing because Fidelity had a reasonable basis to deny coverage under the policy based on NRS 116.3116 and the language of the endorsements. *See Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 102 Nev. 601, 605, 729 P.2d 1352, 1354-55 (1986) (providing that breach of the covenant of good faith and fair dealing occurs if the insurer acts with "an actual or implied awareness of the absence of a reasonable basis for denying [the] benefits of the policy"). For similar reasons, we conclude that the district court properly rejected Deutsche Bank's claim that Fidelity

---

[8]Because we determine that the endorsements do not cover Deutsche Bank's losses, we do not need to consider the effect of the policy's exclusions on those endorsements.

breached its duty to defend Deutsche Bank in the litigation with TRP. An insurer's obligation under an insurance policy containing a duty to defend "is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Nautilus Ins. Co. v. Access Med., LLC*, 137 Nev. 96, 99, 482 P.3d 683, 687 (2021). However, if the facts known to the insurer do not show any possibility of coverage, then there is no duty to defend. *Id.* at 100, 482 P.3d at 688. Our discussion above shows that there has never been a potential for coverage based on the undisputed facts of this case. Thus, the duty to defend did not arise.

*The claim for unfair claims practices was properly dismissed*[9]

Deutsche Bank contends that it stated a claim for relief under NRS 686A.310 because Fidelity improperly denied coverage, and regardless of whether coverage ultimately exists, the statute subjects an insurer to liability for improperly handling claims.

NRS 686A.310 prohibits insurers from engaging in certain "unfair practice[s]" in handling its insureds' claims. An insurer who violates any of the subsections therein "is liable to its insured for any damages sustained by the insured as a result of the commission of any act" that constitutes "an unfair practice." NRS 686A.310(2).

---

[9]Deutsche Bank also claims Fidelity engaged in deceptive trade practices. Deutsche Bank argues, without analysis, that the general prohibition against the assignment of tort claims is not implicated by a claim for deceptive trade practices. Without citing to authority, it contends that, in any event, it suffered injury or damages as a result of Fidelity's deceptive trade practices as evidenced by internal manuals. We reject these arguments as they are not properly supported. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (declining to address arguments unsupported by relevant authority or cogent argument). And more fundamentally, Deutsche Bank does not establish any knowingly false representation on the part of Fidelity.

Although nothing in the statute limits its application to an affirmative finding of coverage under the policy, Deutsche Bank's allegations draw on the internal manuals to argue that Fidelity misrepresented coverage under the policy and wrongfully denied coverage. For example, Deutsche Bank alleges that Fidelity's denial of coverage violated NRS 686A.310(1)(a), (1)(c), and (1)(e), under which insurers are prohibited from misrepresenting facts related to coverage, failing to promptly investigate and process claims, and failing to settle claims when the insurer's liability has become reasonably clear, respectively. But Fidelity did not improperly deny coverage under the policy, and the internal manuals do not show that Fidelity made prior representations, let alone misrepresentations, of the existence of coverage.

Additionally, Deutsche Bank ignores pertinent language in the statute. For instance, in stating that Fidelity's coverage denial by itself failed to effectuate a prompt, fair, and equitable settlement of the claim, Deutsche Bank ignores the qualifying language "in which liability of the insurer has become reasonably clear." *See* NRS 686A.310(1)(e). But Fidelity's liability did not become reasonably clear because the policy did not cover Deutsche Bank's losses. As another example, Deutsche Bank's allegations that Fidelity violated subsection (1)(c) hinge simply on the denial of coverage without any connection to the standards used in the "investigation" and "processing" of the claim. *See* NRS 686A.310(1)(c). Deutsche Bank does not even suggest that Fidelity failed to properly investigate or process the claim; it only disputes the outcome of that investigation and process. Yet another example is Deutsche Bank's claim that Fidelity improperly required it to bring this litigation by denying coverage in violation of subsection (1)(f), as Deutsche Bank fails to explain

Supreme Court
of
Nevada

(O) 1947A

23

how the subsection even applies where the insurer never "offer[ed] substantially less than the amounts ultimately recovered in actions brought by such insured[ ], when the insured[ has] made claims for amounts reasonably similar to the amounts ultimately recovered." *See* NRS 686A.310(1)(f).

Finally, Deutsche Bank contends that Fidelity's failure to respond to its request for reconsideration of the claim denial violated subsections (1)(d), (1)(e), and (1)(n) of NRS 686A.310. However, Deutsche Bank cites no authority that these subsections pertain to an internal appeal of a claim denial or require an insurer to entertain a request for reconsideration. Nothing in their plain language indicates that these subsections apply, requiring instead prompt denial or affirmance of the claim, a reasonable explanation of such denial or affirmance, and fair processes in the settlement of the claim. There is no suggestion that Fidelity's first denial did not comply with these requirements. Thus, even assuming NRS 686A.310 applies regardless of any affirmative coverage under the policy, and even accepting the allegations in Deutsche Bank's complaint as true, it failed to state a claim for relief under NRS 686A.310. Accordingly, we affirm the district court's dismissal of the claim. [10]

---

[10]Deutsche Bank asserts that it should have been granted leave to amend to add waiver and estoppel allegations because Fidelity is attempting to rely on reasons for denying the claim that were not raised during the claim denial. Deutsche Bank would also add facts to bolster its extra-contractual allegations. We disagree as in the insurance context, "'there is a well established doctrine that waiver and/or estoppel cannot be used to extend the coverage or scope of the policy." *Prime Ins. Syndicate, Inc. v. Damaso*, 471 F. Supp. 2d 1087, 1098 (D. Nev. 2007) (quoting *Walker v. Am. Ice Co.*, 254 F. Supp. 736, 741 (D.D.C. 1966)). Also, Deutsche Bank has not stated what additional facts it would allege that would lead to a

Supreme Court
OF
Nevada

(O) 1947A

## CONCLUSION

The applicability of the at-issue endorsements in the title-insurance policy depends on the interpretation of NRS 116.3116, which is unambiguous. Under that statute, an HOA's lien for assessment obligations arises when the assessment obligation becomes due. Moreover, NRS 116.3116 determines the superpriority of the HOA's assessment lien over the first security interest by reference to the assessment obligation and when it becomes due. Applying this understanding of NRS 116.3116 to the allegations in the complaint, the assessment lien that extinguished Deutsche Bank's deed of trust arose roughly seven years after the date of policy. Because the CLTA 115.2 endorsement insures losses resulting from the priority of assessment liens in existence at the date of the policy, this post-policy lien does not fall within the endorsement's scope.

We also conclude that without NRS 116.3116, which created a statutory lien comprised of a superpriority piece, as well as the ability to enforce that piece and extinguish a first security interest, the enforcement of the HOA's assessment lien would not extinguish a first security interest. Therefore, the injury alleged arose not by the existence of an HOA's CC&R or a violation of a CC&R, but by the existence of NRS 116.3116. Because only the statute creates the HOA's superpriority assessment lien and drives the ensuing extinguishment of a first security interest, the CLTA 100 endorsement does not provide coverage for Deutsche Bank's losses. Nor can it be said that a future violation on the land of a CC&R caused the loss under CLTA 100(2)(a), when, again, only the statute allows for the HOA to extinguish a first deed of trust by enforcement of its superpriority

___

different result, nor did it attach a proposed amended complaint. Accordingly, amendment would be futile under these circumstances.

SUPREME COURT
OF
NEVADA

(O) 1947A

assessment lien.    Accordingly,  operation  of  NRS  116.3116  precludes coverage  under  the  title-insurance  policy  endorsements  CLTA  115.2  and CLTA 100.

Accordingly,  we  affirm  the  district  court's  order  dismissing Deutsche Bank's complaint.

_____, J.
Cadish

We concur:

_____, C.J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A